1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    PATRICIA SAWYER,                    Case No.  1:20-cv-01687-HBK

12              Plaintiff,                ORDER GRANTING PLAINTIFF'S MOTION
                                          FOR SUMMARY JUDGMENT, DENYING
13        v.                              DEFENDANT'S MOTION FOR SUMMARY
                                          JUDGMENT, AND REMANDING CASE TO
14    KILOLO KIJAKAZI,                    COMMISSIONER OF SOCIAL SECURITY[1]
      COMMISSIONER OF SOCIAL
15    SECURITY,                           (Doc. Nos. 18, 19)

16              Defendant.

17

18        Patricia Sawyer ("Plaintiff"), seeks judicial review of a final decision of the

19    Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

20    supplemental security income and disability insurance benefits under the Social Security Act.

21    (Doc. No. 1).  The matter is currently before the undersigned on the parties' briefs, which were

22    submitted without oral argument.  (Doc. Nos. 18-19, 22).  For the reasons set forth more fully

23    below, the Court grants Plaintiff's motion for summary judgment, denies Defendant's motion for

24    summary judgment, and remands the matter to the Commissioner of Social Security for further

25    administrative proceedings.

26        ////

27    ─────────────────────

28    [1]  Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
      §636(c)(1).  (Doc. No. 9).

1                                **I.      JURISDICTION**

2            Plaintiff protectively filed for supplemental security income and disability insurance

3 benefits on August 5, 2017, alleging a disability onset date of March 31, 2017 in both

4 applications.  (AR 436-48).  Benefits were denied initially (AR 245-72, 300-03) and upon

5 reconsideration (AR 179-210, 311-17).  Plaintiff appeared for a hearing before an administrative

6 law judge ("ALJ") on October 11, 2018.  (AR 111-45).  Plaintiff testified at the hearing and was

7 represented by counsel.  (*Id.*).  The ALJ denied benefits (AR 275-94), and on January 13, 2020

8 the Appeals Council remanded the case for further administrative proceedings.  (AR 295-99).

9 Plaintiff appeared for another hearing before the ALJ on May 5, 2020.  (AR 146-78).  Plaintiff

10 was represented by counsel and testified at the hearing.  (*Id.*).  On May 29, 2020 the ALJ denied

11 benefits (AR 13-36), and the Appeals Council denied review.  (AR 1-7).  The matter is before the

12 Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

13                                **II.      BACKGROUND**

14            The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

15 decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are

16 summarized here.

17            Plaintiff was 53 years old at the time of the second hearing.  (*See* AR 473).  She testified

18 that she has taken college classes.  (AR 150, 466).  She lives with a friend that is also her

19 caretaker.  (AR 150-51).  She has a work history as a teacher's aide and childcare attendant.  (AR

20 151-52, 173).  Plaintiff testified that she is not able to work because she is fatigued all the time,

21 cannot lift more than 5 pounds, cannot walk or sit for very long, and does not want to be around

22 people.  (AR 153).  She has pain in her neck, back, lower back, hands, and head.  (AR 153).

23 Plaintiff reported she has received multiple injections in her neck, upper back, lumbar region, and

24 wrists, that alleviate pain for a short period of time but do not "remedy it."  (AR 154-56).  She

25 testified that she is afraid to be around people, is "crying or tearful" every day, takes medication

26 for anxiety, and has difficulty listening.  (AR 165-69).

27                             **III.      STANDARD OF REVIEW**

28            A district court's review of a final decision of the Commissioner of Social Security is

1    governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

2    Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

3    is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

4    evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

5    conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

6    equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

7    citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

8    consider the entire record as a whole rather than searching for supporting evidence in isolation.

9    *Id.*

10        In reviewing a denial of benefits, a district court may not substitute its judgment for that of

11    the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

12    to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

13    2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

14    harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

15    nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's

16    decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

17    U.S. 396, 409-10 (2009).

18                        **IV.    SEQUENTIAL EVALUATION PROCESS**

19        A claimant must satisfy two conditions to be considered "disabled" within the meaning of

20    the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

21    activity by reason of any medically determinable physical or mental impairment which can be

22    expected to result in death or which has lasted or can be expected to last for a continuous period

23    of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the

24    claimant's impairment must be "of such severity that he is not only unable to do his previous

25    work[,] but cannot, considering his age, education, and work experience, engage in any other kind

26    of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A),

27    1382c(a)(3)(B).

28        The Commissioner has established a five-step sequential analysis to determine whether a

3

claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20

C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 31, 2017, the alleged onset date.  (AR 20).  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine and cervical spine, carpal tunnel syndrome, major depressive disorder and generalized anxiety disorder.  (AR 20).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  (AR 21).  The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift 20 pounds occasionally, 10 pounds frequently; stand, walk and/or sit for six out of eight hours, each; occasional ramps or stairs; occasional ladders, ropes and scaffolds; occasional stoop, crouch, crawl, and kneel; occasional overhead reaching bilaterally; frequent bilateral handling and fingering; capable of noncomplex and routine tasks in [sic] with only occasional decision making or work place

5

changes; can maintain concentration and attention for two-hour increments; accept direction from supervisors, and remain socially appropriately [sic] with coworkers, and occasional public contact.

(AR 23-24).  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (AR 29).  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: office helper, inspector hand packager, and bench assembler.  (AR 30-31).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 31, 2017, through the date of the decision.  (AR 31).

## VI.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the following issues for this Court's review:

1.   Whether the RFC was supported by substantial evidence and free from legal error in light of the ALJ's consideration of the medical opinion evidence; and

2.   Whether the ALJ properly considered Plaintiff's symptom claims.

(Doc. No. 18 at 21-34).

## VII.    DISCUSSION

### A. RFC / Medical Opinions

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F .R. § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record.  (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec*., 613 F.3d 1217, 1222-23 (9th Cir. 2010).

Ultimately, a claimant's RFC is a matter for the ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

Plaintiff argues the ALJ erred in assessing the RFC because she improperly considered the medical opinion evidence. (Doc. No. 18 at 21-31). For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion.  *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022).  Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence.  *Id.* at 792.  This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings."  *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

**1. Jason Lee, M.D.**

Plaintiff argues the RFC failed to account for physical limitations assessed by Plaintiff's treating physician Dr. Jason Lee.  (Doc. No. 18 at 22-28)  In May 2018, Dr. Lee opined that Plaintiff was precluded from performing full time work at any exertion level and she could sit for 2-4 hours in an 8-hour work day; stand/walk for 1-2 hours in an 8-hour work day; lie down or elevate her legs for about 2 hours during an 8-hour work day; lift less than 5 pounds frequently during a work day; lift about 5 pounds occasionally during a work day; reach and grasp about 30 minutes in an 8-hour workday but she would need to rest her hands after less than 5 minutes; handle for one hour in an 8-hour workday but she would need to rest her hands after less than 10 minutes; and do no reaching/grasping, feeling, pushing/pulling, or fine finger manipulation.  (AR 767-68).  Also in May 2018, Dr. Lee submitted an opinion that Plaintiff was permanently

disabled, unable to work full or part time, and limited in her ability to lift, push, pull, reach, bend, sit and stand for prolonged periods, climb, carry, and in fine and gross manipulation of her hands. (AR 640).  The ALJ found Dr. Lee's opinions unpersuasive.  (AR 28).

As to the supportability factor, the ALJ found Dr. Lee's opinions were not supported by his treatment notes.  (AR 28).  Aside from "generally" citing a portion of Dr. Lee's treatment notes from March 2018 through March 2020, the ALJ also noted that "[f]or instance, his treatment notes did not advise the claimant to elevate her legs."  (AR 28).  Plaintiff argues that the only supporting evidence given by the ALJ for discounting Dr. Lee's opinion is based on a misinterpretation of the opinion, because Dr. Lee was asked to assess how long Plaintiff must "lie down or elevate her legs" as opposed to requiring that she *must* elevate her legs for two hours. (Doc. No. 18 at 23-24).  The ALJ does not cite to, nor is the Court able to discern, legal authority to support a finding that limitations opined by a treating provider must be identical to a prescribed course of treatment in that provider's treatment notes.  Rather, the new regulations regarding the ALJ's consideration of supportability instructs that the "more relevant the objective medical evidence and supporting explanations *presented by a medical source* are to support his or her medical opinions," the more persuasive the opinion will be.  *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(1) (emphasis added).

Moreover, when considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Brown-Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.  Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725.  In addition, as noted above, the Ninth Circuit recently clarified that under the new regulations for considering medical evidence, "an ALJ cannot reject an examining or treating doctor's opinion as

1    unsupported or inconsistent without providing an explanation supported by substantial evidence.

2    The agency must 'articulate … how persuasive' it finds 'all of the medical opinions' from each

3    doctor or other source, and 'explain how [it] considered the supportability and consistency

4    factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted).  The

5    ALJ's general citation to the treatment notes, and the purported lack of "advice" regarding

6    Plaintiff's need to elevate her legs, fails to provide the requisite explanation for how the specific

7    physical limitations assessed by Dr. Lee are unsupported, particularly as to Plaintiff's ability to

8    reach, grasp, and handle due to carpal tunnel syndrome.

9         Finally, the ALJ fails to consider objective findings specifically noted in Dr. Lee's opinion

10   offered in support of the opined limitations, pursuant to the new regulations, including 2017 MRI

11   imaging results of the lumbar and cervical spine, 2016 EMG/NCV testing for carpal tunnel

12   syndrome, reduced grip strength and positive Tinel's sign.  (AR 767).   For all of these reasons,

13   the ALJ's supportability finding as to Dr. Lee's opinion is not supported by substantial evidence.

14        As to the consistency factor, the ALJ generally found Dr. Lee's opinions were not

15   consistent with "objective evidence from other sources."  (AR 28).  In support of this finding, the

16   ALJ cites to Plaintiff's "denials" of abnormal gait and postural instability, and several additional

17   treatment notes similarly indicating her gait and station were within normal limits, and she did not

18   require an assistive device.  (AR 28, 575, 579, 584, 600, 609, 654, 809, 1093).  Plaintiff argues

19   the ALJ failed to consider consistent examinations, even in treatment notes cited by the ALJ in

20   support of this finding, that showed reduced range of motion of the lumbar and cervical spine

21   with pain, positive Patrick's test, and positive Reverse Thomas test.  (Doc. No. 18 at 24 (citing

22   584, 613, 661-62, 667-68, 1093, 1127, 1150, 1154-55, 1161, 1164, 1169, 1173, 1181)).

23   Moreover, and perhaps most notably, "the ALJ failed to explain why she rejected the hand

24   limitations opined by Dr. Lee or the evidence upon which Dr. Lee relied, i.e., the results of

25   EMG/NCV testing, reduced grip strength, and positive Tinel's sign. . ..  The ALJ's failure to

26   explain why she rejected this significant, probative evidence is error."  (Doc. No. 18 at 25; AR

27   767).  As noted above, the Ninth Circuit recently clarified that under the new regulations for

28   considering medical evidence, "an ALJ cannot reject an examining or treating doctor's opinion as

10

unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate … how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted). Here, the longitudinal record includes ongoing objective and clinical examinations of Plaintiff's hands and wrists that found positive Tinel's test, positive Phalen's test, positive Finkelstein's test, reduced grip strength, limited range of motion with pain in her wrists, positive EMG testing for bilateral neuropathy at her wrists consistent with carpal tunnel, and x-rays revealing possible inflammatory arthropathy superimposed over osteoarthritis and elongated ulnar styloid with suggestion of ulnar styloid impaction. (Doc. No. 18 at 25-26 (citing AR 655, 668, 792 (referral to hand surgeon), 1036, 1084, 1093, 1097, 1104, 1109, 1113, 1119 (noting Plaintiff exhibits difficulty turning door handle), 1123, 1131, 1135, 1139-40, 1143, 1146, 1150, 1154-55, 1160, 1164, 1169, 1173, 1181)). The ALJ fails to explain how the limitations assessed by Dr. Lee, particularly as to Plaintiff's carpal tunnel syndrome, are inconsistent with "the objective evidence from other sources"; thus, the ALJ's finding that Dr. Lee's opinion was not persuasive because of alleged inconsistency with the record is not supported by substantial evidence. The ALJ must reconsider Dr. Lee's opinion, and reassess the RFC, on remand.

### 2. C. Vincent, Ph.D.

Plaintiff argues the RFC failed to account for mental health limitations assessed by Plaintiff's treating psychologist Dr. C. Vincent. (Doc. No. 22-28). In October 2018, Dr. Vincent opined that Plaintiff had no limitations in her ability to receive and carry out instructions from supervisors; and moderate limitations in her ability to maintain concentration and attention, withstand the stress and pressures associated with an eight-hour work day and day-to-day work activity, deal with the public, and relate and interact with co-workers. (AR 848). Dr. Vincent also opined that Plaintiff had extreme limitations in her ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions; and she would likely miss "half of the days" per month due to mental issues. (*Id*.). The ALJ found Dr. Vincent's opinion unpersuasive because "[a]lthough the opinion is supported by treatment notes, the

1    opinion is not consistent with objective evidence from other sources."  (AR 29).

2           In support of this finding the ALJ cited mental status examination findings that Plaintiff

3    appeared well-developed, well nourished, alert, and oriented as well as exhibited appropriate

4    mood and affect, normal judgment, normal insight, and normal level of consciousness.  (AR 29,

5    556, 562, 568, 600).  Further, the ALJ found the "longitudinal record does not indicate that the

6    claimant would miss half the workdays in a month due to mental issues" because Plaintiff

7    "generally denied depressed mood."[2]  (AR 29, 575, 579, 584).   Plaintiff argues the ALJ failed to

8    consider evidence consistent with Dr. Vincent's opinion, and "failed to explain why Plaintiff's

9    denial of a depressed mood when receiving non-psychiatric treatment was inconsistent with Dr.

10   Vincent's opinion that Plaintiff would miss work."  (Doc. No. 18 at 29-30).

11          The ALJ may not "cherry pick" aspects of the medical record and focus only on those

12   aspects that fail to support a finding of disability.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1164

13   (9th Cir. 2014); *see also Reddick*, 157 F.3d at 725 (when considering the medical opinion

14   evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own

15   interpretations and explain why they, rather than the doctors', are correct.").  Here, the Court's

16   review of the records cited by the ALJ in support of the consistency finding also include evidence

17   that would tend to support Plaintiff's claims of depression, including objective findings of

18   anhedonia, anxiety, fear, hopelessness, and increased activity.  (AR 562, 568).  Moreover, while it

19   does contain denials of depressed mood, as cited by the ALJ, the longitudinal record also contains

20   significant and ongoing reports of depression and abnormal mental status examination findings.

21   (*See, e.g*. AR 558, 610, 655, 662, 668, 750-764, 771, 775, 781, 811, 1031, 1055, 1180).  Thus, a

22   finding that Plaintiff "generally" denied depressed mood is not supported by substantial evidence,

23   nor is it clear how those denials regarding depression at a handful of treatment visits are

24   _____

        [2] The ALJ also noted that despite prescription of benzodiazepines and antidepressants in early 2020, a
25   February 2020 drug urinalysis was negative for those substances, "which indicates that the mental
      impairments are not as severe as alleged." (AR 29 (citing AR 989-90, 994-95, 1186)).  As an initial matter,
26   the Court's review of the cited drug test indicates it was performed in October 2019, as opposed to
      February 2020. (See AR 1186 ("run by: JK on 10/09/2019").  Moreover, while certainly relevant to an
27   analysis of Plaintiff's symptom claims, the ALJ fails to explain how the negative drug test in February
      2020 "indicat[ing] that the mental impairments are not as severe as alleged" is inconsistent with Dr.
28   Vincent's assessed limitations.  *Reddick*, 157 F.3d at 725.

1  inconsistent with Dr. Vincent's overall assessment, properly supported by her own treatment

2  notes, that Plaintiff could not work half of the month.

3       Based on the foregoing, and in light of the need to reconsider Dr. Lee's opinion on

4  remand and reassess the RFC, the ALJ should reconsider Dr. Vincent's opinion on remand.

5  **B. Symptom Claims**

6       Plaintiff additionally argues the ALJ failed to give adequate reasons to reject Plaintiff's

7  testimony.  (Doc. No. 18 at 31-34).  In light of the finding, discussed in detail *supra*, that the RFC

8  needs to be reassessed due to improper consideration of the medical opinion evidence under the

9  new regulations, the Court declines to address this challenge in detail here.  On remand, the ALJ

10  is instructed to reconsider the medical opinion evidence and conduct a new sequential analysis,

11  including a reassessment of Plaintiff's symptom claims, and the step five findings if necessary.

12  **C. Remedy**

13       Plaintiff asks the Court to remand for an immediate award of benefits.  (Doc. No. 18 at

14  34).  The decision whether to remand for further proceedings or reverse and award benefits is

15  within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.

16  1989).  An immediate award of benefits is appropriate where "no useful purpose would be served

17  by further administrative proceedings, or where the record has been thoroughly developed,"

18  *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the

19  delay caused by remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273,

20  1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse

21  its discretion not to remand for benefits when all of these conditions are met).  This policy is

22  based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are

23  outstanding issues that must be resolved before a determination can be made, and it is not clear

24  from the record that the ALJ would be required to find a claimant disabled if all the evidence

25  were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96

26  (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

27       The Court finds that further administrative proceedings are appropriate.  *See Treichler v.*

28  *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not

appropriate when further administrative proceedings would serve a useful purpose).  Here, the ALJ improperly considered the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence.  "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101.  On remand, the ALJ should reconsider the medical opinion evidence and Plaintiff's symptom claims.  The ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts.  The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1.  Plaintiff's Motion for Summary Judgment (Doc. No. 18) is GRANTED.

2.  Defendant's Cross-Motion for Summary Judgment (Doc. No. 19) is DENIED.

3.  Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

4.  An application for attorney fees may be filed by separate motion within thirty (30) days.

5.  The Clerk shall enter judgment in favor of the Plaintiff, terminate any pending motions/deadlines, and close this case.

Dated:    October 6, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

14